HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MYSPINE, PS,

        Plaintiff,

   v.

USAA CASUALTY INSURANCE COMPANY, et al.,

        Defendants.

CASE NO. C13-2179

ORDER

## I. INTRODUCTION

This matter comes before the court on two motions from Plaintiff MySpine, PS: a motion to remand this action to King County Superior Court and a motion to sanction Defendants for removing it. Although Defendants requested oral argument, oral argument is not necessary. For the reasons stated below, the court GRANTS the motion for remand (Dkt. # 24) and orders Defendants to pay MySpine's attorney fees as detailed in this order. The court GRANTS the motion for sanctions (Dkt. # 31) in part, but instead of the sanction MySpine proposed, the court imposes a sanction of $5,000 payable to this court. The court imposes a July 3 deadline for the sanction payment and for the parties' first submission with respect to attorney fees.

## II. BACKGROUND

Defendants have already removed this putative class action once. The court remanded it after Defendants conceded that the court did not have subject matter

ORDER – 1

jurisdiction because Defendants could not demonstrate that the amount in controversy exceeded the $5 million jurisdictional threshold of the Class Action Fairness Act. *See* 28 U.S.C. § 1332(d)(2) (granting subject matter jurisdictions in certain class actions "in which the matter in controversy exceeds the sum or value of $5,000,000"); *see also* Case No. C12-1973RAJ, Jul. 10, 2013 order (Dkt. # 59) at 3 ("[E]veryone finally agrees that the amount in controversy falls below the jurisdictional minimum."). After about five months of litigation in state court, Defendants removed the action again. This time, they contended that MySpine had announced an expansion of its claimed damages that put more than $5 million in controversy. That contention was frivolous and the court concludes that Defendants made it for an improper purpose.

To understand the circumstances of this second removal, the court again summarizes the substantive dispute, a dispute it has not considered on its merits. Briefly, MySpine contends that Defendants, who issue car insurance policies to thousands of Washingtonians, fail to make full personal injury protection ("PIP") payments to medical providers who treat their insureds. MySpine, a chiropractic clinic, is one of those providers. According to MySpine, Defendants rely on a third party to compile prices charged for various medical procedures, and they deny payments to providers serving their PIP insureds to the extent that the amount billed for a procedure exceeds the 80th percentile of those prices. MySpine not only contends that it has been damaged by this practice, but that thousands of providers across Washington have been damaged as well.

MySpine sued only two Defendants: USAA Casualty Insurance Company and USAA General Indemnity Company. The court will refer to these Defendants as "USAA Casualty" and "USAA General." That nomenclature is important, because both Defendants are subsidiaries of United Services Automobile Association, whom the court will call "USAA." USAA issues its own insurance policies to Washington motorists.

ORDER – 2

1   In August 2013, MySpine propounded discovery that included an interrogatory
2   asking for information about reductions like the reductions at issue in this case, but made
3   by any USAA employee. The court has no idea what language the interrogatory used,
4   because despite the glut of evidence in the record, MySpine never cited or submitted the
5   interrogatory itself. Instead, it cited its description of that interrogatory in a motion to
6   compel that it filed in state court on November 19, 2013. Mot. to Remand at 6 & n.16.
7   That description is as follows:

> Interrogatory no. 1 seeks information on all RF or RF_1 reductions made by an employee of USAA (i.e. United Services Automobile Association) because discovery shows that all adjusters who reduced Washington provider bills were employees of USAA and that the adjusters used the same practices at issue when reducing bills submitted under a USAA Casualty, USAA General, Garrison Property & Indemnity, or USAA auto policy in Washington.

Mot. to Compel at 4. The motion to compel then explained that the "reductions at issue were taken by employees of USAA and the existence of a general, common practice, applied to all Washington provider bills is clearly at issue in this class action. Equally, the issue of whether the practice affects the public interest by affecting a substantial number of providers is relevant to establishing an unfair CPA practice." *Id.* at 4-5.

When Defendants received the motion to compel, they knew that MySpine's argument was that because everyone who adjusted claims for USAA General or USAA Casualty was an employee of USAA, the actions of those employees on any claim – even claims submitted on USAA policies – were relevant to the claims in this action.

Defendants insist, however, that the motion to compel did more than advise them of a theory by which USAA's conduct was relevant to proving MySpine's claims against USAA General and USAA Casualty – it expanded MySpine's damage claims to include every claim that a USAA employee reduced, including claims on USAA policies. Defendants' interpretation is exceedingly difficult to comprehend on its face, because the court is aware of no means by which MySpine could obtain damages flowing from

ORDER – 3

USAA's reductions of payments on USAA policy claims *without suing USAA*. But Defendants would have the court believe that they believed exactly that. To demonstrate why, they point to this paragraph from earlier in MySpine's motion to compel:

> Plaintiff alleges that all USAA auto companies in Washington use this same practice [(the 80th percentile reductions)] and that all companies use adjusters who are employees of United Services Automobile Association ("USAA") to reduce the bills submitted by all Washington health care providers. Plaintiff filed this action as a class action on behalf of all Washington providers whose bills were reduced by USAA using an RF or RF_1 reason code.

Mot. to Compel at 2. As the language suggests, the paragraph was part of MySpine's summary of its case. Defendants contend that their receipt of that paragraph was a crucial moment, because it announced for the first time that MySpine would seek damages not just from reduced payments on USAA General and USAA Casualty claims, but on USAA claims. In Defendants' view, adding damages from USAA claims to damages from USAA General and USAA Casualty claims, plus other elements of the "amount in controversy," (including attorney fees and the costs of complying with an injunction against the adjustment practices) pushed the amount in controversy above $5 million. Defendants filed a second notice of removal on December 5, 2013.

MySpine's motion to remand followed, and MySpine followed that motion with a motion to sanction Defendants $35,000 in addition to MySpine's attorney fees for fighting for remand.

### III.  ANALYSIS

**A.     Removal & Remand: Burden of Proof, Amount in Controversy, and Timeliness Requirement**

Defendants, as the parties seeking a federal forum, bear the burden of proving that this court has jurisdiction. *Rodriguez v. AT&T Mobility Servs., LLC,* 728 F.3d 975, 978 (9th Cir. 2013). The Class Action Fairness Act's $5 million minimum amount in controversy is the only jurisdictional requirement in dispute. Defendants must therefore

ORDER – 4

prove by a preponderance of the evidence that the amount in controversy in this dispute exceeds that threshold. *Id.* at 981.

Moreover, Defendants must prove that they did not know more than 30 days before they removed the case that the amount in controversy exceeded $5 million. MySpine challenges the timeliness of Defendants' removal, noting that 28 U.S.C. § 1446 mandates removal either within 30 days of the initial pleading that states a controversy worth more than the jurisdictional amount (§ 1446(b)(1)) or, if the initial pleading does not state a controversy worth that much, within 30 days of "receipt . . . through service or otherwise" of an amended pleading or "other paper" that contains that information. 28 U.S.C. § 1446(b)(3). 28 U.S.C. § 1446(c)(3)(A) clarifies that when "the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection (b)(3)."

**B.     The Court Will Not Decide if Defendants Timely Removed.**

In Defendants' view, MySpine's motion to compel was the "other paper" that first informed them that the amount in controversy exceeded $5 million. That motion came fewer than 30 days before Defendants removed, but MySpine claims that it was not the first time Defendants learned of the alleged new damages, because the interrogatory at issue in the relevant portion of the motion to compel came nearly three months sooner, in August. Ultimately, the court will not resolve that contention. As noted, MySpine failed to cite the actual interrogatory, and the court will not sift through the several-thousand-page record of the state court litigation (Dkt. # 4) in search of its text. MySpine also cites an email it sent (more than 30 days before removal) to Defendants' counsel requesting responses to its discovery requests, but that email contained no specific information about the interrogatory at issue. Breskin Decl. (Dkt. # 25), Ex. 4. The court bypasses

ORDER – 5

MySpine's evidentiary shortcomings as to the timeliness of removal, because Defendants' removal was invalid even if it was timely. To explain why, the court returns again to the motion to compel.

### C. There Is No Colorable Argument that MySpine's Motion to Compel Announced a New Category of Damages.

No reasonable attorney could have believed that MySpine's motion to compel announced a new category of damages based on claims that USAA (as opposed to USAA General and USAA Casualty) had unlawfully reduced on claims from providers serving its insureds (as opposed to the insureds of USAA General and USAA Casualty). To begin, as the court has already noted, Defendants have not even attempted to explain how MySpine could recover damages flowing from USAA's unlawful reductions *without suing USAA*. Defendants, who have strenuously resisted essentially every contention in the motion now before the court, would have the court believe that they accepted uncritically that MySpine could somehow recover damages based on USAA's payments of claims arising from its own policies even though USAA is not a party to this suit. Defendants would also have the court believe that they formed that belief based on a single sentence from MySpine's motion to compel. That sentence, stripped of every shred of context, states as follows: "Plaintiff filed this action as a class action on behalf of all Washington providers whose bills were reduced by USAA using an RF or RF_1 reason code." A person reading that sentence alone might believe MySpine was seeking damages arising from payments made on claims under USAA polices. Of course, a person reading that sentence alone might also believe that USAA General and USAA Casualty policies were not at issue in this case. Attorneys are charged with reading sentences in context, and however imprecisely MySpine described its lawsuit in that sentence, Defendants knew that there was no support elsewhere for the notion that MySpine was seeking damages flowing from improper reductions on USAA PIP claims. MySpine's complaint does not seek those damages, and Defendants do not contend

ORDER – 6

otherwise.  Indeed, Defendants point to nothing beyond that single sentence (and MySpine's failure to expressly disavow, without any prompting from Defendants, the meaning that Defendants purportedly ascribed to it) to support their theory that they learned of a new theory of damages when MySpine filed its motion to compel. Defendants do not address the remainder of the motion to compel, wherein MySpine explained its theory that reductions made on USAA policies (as well as "Garrison Property & Indemnity" policies) were relevant because they were made by the same group of adjusters who made the reductions at issue in this case, which helped prove not only the existence of the reduction practice, but helped demonstrate the public interest impact that the Washington Consumer Protection Act requires.[1]  They do not explain why they never, so far as the record reveals, inquired of MySpine whether it or the putative class intended to seek damages based on damages flowing from USAA policies.

Even if the court were to strain mightily to assume, for the sake of argument, that Defendants genuinely believed that MySpine's motion to compel announced a new category of damages, Defendants would have no more legitimate basis for removal.  By relying on the motion to compel as the "other paper" that first announced that basis for removal, they admit that the new category of damages was not previously part of the case.  To make the new damages category part of the case, MySpine would have to amend its complaint.  Virtually every court to consider the issue has held that a case is not removable based on the new portions of an amended complaint until the state court issues an order allowing that complaint to be filed.  *Sullivan v. Conway*, 157 F.3d 1092,

---

[1] The removability of a case is judged at the time of removal, *Allen v. FDIC*, 710 F.3d 978, 984 (9th Cir. 2013), so the court has not considered MySpine's express disavowal of any damages based on USAA's improper reductions on claims involving its insureds.  *E.g.*, Pltf.'s Reply (Dkt. # 34) at 3 (noting that the complaint "limited the class claims to Casualty and General PIP claims").  Defendants complain repeatedly, as they did when they removed the first time, that MySpine's counsel's practice is to minimize damages while seeking remand only to attempt to expand damages once a case has returned to state court.  As the court stated the first time, there is nothing this court can do about that. Jul. 10, 2013 ord. at 2.  The court, unlike Defendants, has faith that the state court (prompted by Defendants' tireless advocacy) will ensure that MySpine does not succeed by making inconsistent representations to different courts.

ORDER – 7

1094 (7th Cir. 1998); *Freeman v. Blue Ridge Paper Prods, Inc.*, 551 F.3d 405, 410 (6th Cir. 2008); *Lion Raisins, Inc. v. Fanucchi*, 788 F. Supp. 2d 1167, 1172-73 (E.D. Cal. 2011) (noting absence of Ninth Circuit authority, adopting view that order permitting amended pleading, not the request to amend, is the trigger for removal); *Svoboda v. Smith & Nephew, Inc.*, 943 F. Supp. 2d 1018, 1020-22 (E.D. Mo. 2013) (surveying courts nationwide, noting majority and minority views).  Surely Defendants, who have opposed MySpine vigorously throughout this litigation, would have insisted that a "new" category of damages worth millions of dollars required an amended pleading.

Defendants had no valid reason to remove this action a second time.  The court reaches that conclusion solely by rejecting Defendant's contention that MySpine's motion to compel announced a new category of damages based on USAA's improper actions with respect to claims under its insurance policies.  That makes it unnecessary to consider MySpine's numerous other attacks on Defendants' notice of removal, including its contentions that even with the new USAA-based damages, the amount in controversy does not exceed $5,000,000.

**D.    The Court Awards MySpine Its Reasonable Attorney Fees and Expenses For Obtaining Remand and Imposes Sanctions Payable to the Court.**

When a court remands an improperly removed action, it "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).  In general, a court should make an award under this provision "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  This is just such a case.  The court accordingly orders Defendants to pay the reasonable attorney fees and reasonable expenses MySpine incurred in obtaining a remand of this case. The parties shall meet and confer to determine if they can agree on a payment.  If they do so, they shall file a statement in this court (which will retain jurisdiction for purposes of finalizing a fee and expense award) no later than July 3, 2014.  If they are unable to

ORDER – 8

agree, MySpine may file a motion for attorney fees and expenses by the same deadline. The court will sanction any party who takes an unreasonable position in support of or in opposition to that motion.

What remains is MySpine's separate motion for sanctions, which invokes Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the court's inherent power as bases for the court to impose a "fine[] [of] $35,000 in fees, costs and sanctions." Mot. for Sanctions at 12. MySpine does not explain what fees and costs are at issue beyond those that it will already recover via 28 U.S.C. § 1447(c), nor does it explain why it chose $35,000, as opposed to another figure, as the amount of the award. The court assumes, therefore, that MySpine seeks a $35,000 award purely as a sanction for Defendants' improper removal and as a deterrent to similar future conduct. MySpine's motion relies not only on the lack of a legal basis for removal, but on a blow-by-blow description of Defendants' conduct in seeking removal the first time and its misconduct in state court, including an allegation that Defendants removed this case to avoid producing discovery that the state court had ordered just before removal and to avoid a string of losses on motions in state court. Defendants respond with their own account of events, wherein it is MySpine who was on a losing streak in state court (a losing streak that would suggest that Defendants would want to remain in state court), and MySpine who engaged in litigation misconduct. The court dislikes refereeing such squabbles in disputes in its own court; it will not do so for dispute in another court. The court is confident that the state court will impose sanctions on remand if they are appropriate.

Each of the bases for sanctions that MySpine announces requires an exercise of the court's discretion. *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1117 (9th Cir. 2000) (reviewing sanctions imposed under § 1927 and court's inherent power); *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 638 (reviewing Rule 11 sanctions). In exercising that discretion, the court starts with Defendants' objectively

ORDER – 9

baseless removal.  Although sanctions are an extraordinary measure, the court agrees with MySpine to the extent it notes that the court ought to discourage Defendants and any similarly-situated defendant from derailing a state court action on a frivolous basis.  The court also notes the strong possibility that Defendants removed not because they legitimately believed they had a right to federal forum, but simply for the purpose of delay or other tactical gain.  The court does not believe Defendants' counsel to be incompetent, and therefore concludes that counsel knowingly filed a frivolous notice of removal for reasons other than ultimately having this dispute decided in federal court.  That is egregious.  Mitigating against sanctions is that the only specific finding of misconduct the court will make is that Defendants knowingly filed a legally and factually unsupported notice of removal for an improper purpose, and continued that misconduct in opposing MySpine's motion for remand.  Beyond that specific finding, court does not believe that combing through the parties' competing assertions of bad conduct and bad motives is likely to reveal a picture of anything except a litigation in which the parties' relationship has deteriorated well beneath the standards of civility that this court imposes on the parties who appear before it.  The court's prior orders already expressed its disappointment in both parties for their approach to litigating this matter after Defendants' first removal. Jul. 10, 2013 ord. at 2 ("Were the court's resources infinite, it might engage in its own inquiry, to determine how to apportion fault among Plaintiff and Defendants for this eight-month detour.  It is hard to imagine that anybody, the parties, the putative class, this court, or the state court, has benefitted from that detour.").  In addition, the court will not impose a sanction award based on Defendants' choice to remove this litigation the first time.  MySpine could have requested sanctions at that time, and the court will not consider a belated request for conduct that previously went unmentioned.

ORDER – 10

Considering all of these factors, the court imposes a sanction of $5,000, payable into the registry of this court. It does so because it concludes that Defendants violated at least three of Rule 11's prohibitions, which include prohibitions on filing documents that raise claims for an improper purpose or based on unsupported legal or factual contentions. Fed. R. Civ. P. 11(b)(1)-(4) (listing sanctionable conduct); *see also* Fed. R. Civ. P. 11(c)(1) (permitting imposition of sanctions on "any attorney, law firm, or party that violated the rule"). The court imposes that sanction both to punish Defendants' egregious conduct and to acknowledge that Defendants have made demands on this court's limited resources for no legitimate purpose. The court orders the payment into the court's registry, rather than to MySpine, because MySpine will already be compensated for its efforts in obtaining remand, and because the court believes that making the award payable to MySpine would be an unjustified windfall. The court notes that it is the state court who likely suffers the greatest damage from Defendants' shenanigans, and the court's decision not to impose a greater sanction acknowledges that a sanctions award in this court cannot remedy the harm done to the state court.

The court imposes the sanction on "Defendants" generically. The court expects that the Defendants and their counsel will be able to decide amongst themselves who was responsible for the decision to remove this case this time.

Defendants shall make their sanctions payment into the registry of this court, they shall do so no later than July 3, 2014, and they shall file proof of their payment by the same deadline.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS MySpine's motion to compel (Dkt. # 24), and directs the clerk to REMAND this action to King County Superior Court. The court GRANTS MySpine's motion for sanctions (Dkt. # 31) solely to the extent described above. The court retains jurisdiction to finalize its award of attorney fees and

ORDER – 11

1  expenses and to confirm Defendants' payment of sanctions.  That payment, along with
2  the parties' joint statement or MySpine's motion for fees and expenses, is due no later
3  than July 3, 2014.
4        DATED this 23rd day of June, 2014.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 12